EISEMAN et al. v. SCHIFFER et al.

(Circuit Court, S. D. New York. August 28, 1907.)

1. TRADE-MARKS AND TRADE-NAMES — VALIDITY OF TRADE-MARK FOR SILK GOODS—"RADIUM."

The word "radium" is not descriptive as applied to silk, and its exclusive use by a manufacturer as a trade-mark on pieces of taffeta silk having a special soft finish, and its registry under Act Feb. 20, 1905, c. 592, 33 Stat. 724 [U. S. Comp. St. Supp. 1907, p. 1008], as a trade-mark for "silk dress goods in the piece," gives the proprietor the right to protection against its use on such goods by another, although its own goods were of the kind used mostly for linings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 4, 5.]

2. SAME—ASSIGNMENT—VALIDITY.

Under section 10 of the trade-mark act of Feb. 20, 1905, c. 592, 33 Stat. 727 [U. S. Comp. St. Supp. 1907, p. 1013], which provides that "every

registered trade-mark * * * shall be assignable in connection with the good will of the business in which the mark is used," a trade-mark registered under the act cannot be assigned unless such good will is also transferred, and, where a trader had sold a particular article under a selected name to such extent as to secure registration, an assignment of the trade-mark confers no rights on the assignee if the assignor continues to sell the same article, although under a different name.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 3S.]

3. SAME—RIGHT TO SUE FOR INFRINGEMENT—ABANDONMENT.

Where the proprietor of a registered trade-mark made an assignment of the same, which was invalid to convey any rights to the assignee, but itself discontinued the use of such mark, such discontinuance operated as an abandonment, and neither assignor nor assignee can maintain a suit for infringement because of the use of the trade-mark by another after such abandonment.

[Ed. Note.—Abandonment, see note to Saxlehner v. Eisner & Mendelson Co., 33 C. C. A. 294.]

In Equity.

This is a final hearing in a suit in equity for an injunction, accounting, and damages based on defendants' use, on silk dress goods in the piece, of the word "radium," which complainant Gilbert Manufacturing Company claims to have adopted, used, and registered as a trade-mark, and thereafter to have assigned to the firm of Eiseman & Co., also complainant.

Joseph L. Levy and Austen G. Fox, for complainants.
Cooke & Forsch and Archibald Cox, for defendants.

LACOMBE, Circuit Judge. There is no diversity of citizenship, and jurisdiction is based solely on the fact that the trade-mark is registered under the federal trade-mark act of February 20, 1905, c. 592, 33 Stat. 724 [U. S. Comp. St. Supp. 1907, p. 1008]. Application was filed May 1, 1905, and the trade-mark (No. 45,759) was registered August 29, 1905. It is stated in the declaration that the class of merchandise to which the trade-mark is appropriated is dry goods, and that the particular description of goods upon which the trade-mark is used is "silk dress goods in the piece." The record shows that the Gilbert Company was the first person in this country to use the word "radium" as a distinct mark of any kind of silk goods in the piece. Prior to application they had affixed it to goods made entirely of silk, sold only in the piece, of the class generally known as "taffetas," but with a special soft finish so that it might be appropriate for use as a lining (for which ordinary taffeta was mainly used) and also for outer garments. These circumstances, actual use, and priority over others entitled them to registration of the trade-mark for "silk dress goods in the piece." If a silk fabric is of such a character as to be appropriate for use in making dresses it would seem to be "dress goods," even though persons who are able to afford such luxuries purchase fabrics still softer, more lustrous, and heavier for the outer garment, and use the improved taffeta for a lining. The fabrics whose further sale it is sought to enjoin are heavier, softer, and more lustrous than the silk dress goods which the Gilbert Company was selling at the date

of registration, and a great deal of testimony has been taken as to the character, finish, prices, and uses of silk fabrics. But it would seem that the circumstance that defendants sell a better grade of "silk dress goods in the piece" should not justify them in doing so under a trade-mark which another person has already secured as distinctive of his "silk dress goods in the piece." The testimony indicates that defendants did not make use of the word "radium" with any intention to capture the Gilbert Company's trade; they and others who also used it did so, some of them at least, in ignorance of the Gilbert Company's use. The word came into use in Paris in connection with peculiarly lustrous fabrics, and was taken up by many persons here for use in the same connection. But that circumstance is immaterial, because the evidence shows that the word was first used here by the Gilbert Company, and had been registered by it (under the earlier act of March 3, 1881, c. 138, 21 Stat. 502 [U. S. Comp. St. 1901, p. 3401]) long before any one else used it in this country. Every manufacturer and dealer must be held to be informed as to the registration—that is what registration acts are for—and in the case of a technical trademark, which this is, intent is immaterial. The contention that the word "radium" is descriptive of the silk fabric and therefore not a proper trade-mark is without merit. The conclusion is reached that at the time of the assignment to Eiseman & Co. the Gilbert Company owned a valid trade-mark applicable to silk dress goods in the piece, and that the sale of fabrics such as here complained of would be an infringement of the rights of the owner of such trade-mark.

On November 23, 1905, the Gilbert Company and Eiseman & Co. signed a written agreement by the terms of which, in consideration of certain royalties to be paid by Eiseman & Co., or their sublessees, the company agree to lease their privileges as conferred by the Patent Office under the registered trade-mark, the company retaining ownership of the copyright, but transferring all its rights and good will for a period of two years. On the same day an instrument purporting to be an assignment was executed by the Gilbert Company to Eiseman & Co., purporting to transfer, subject to the terms and conditions of the agreement, "all its, the said Gilbert Manufacturing Co.'s, right, title, and interest in and to the said trade-mark, together with all the right, title, and interest in the good will of its business in which the said trade-mark has been used."

The statute (Act February 20, 1905) provides as follows:

"Sec. 10. That every registered trade-mark, * * * shall be assignable in connection with the good will of the business in which the mark is used. Such assignment must be by an instrument in writing and duly acknowledged according to the laws of the country or state in which the same is executed; any such assignment shall be void as against any subsequent purchaser for a valuable consideration, without notice, unless it is recorded in the Patent Office within three months from the date thereof. The commissioner shall keep a record of such assignments."

The assignment to Eiseman & Co. was not acknowledged, but it is not necessary to consider the argument submitted as to the effect of that omission. Whatever may be the law as to the assignment of trade-marks generally, it is manifest from the language of the section

quoted that no assignee of a trade-mark registered under the act of 1905 acquires any right to enforce it unless the good will of the business in which the mark is used is transferred with the mark. As has been said before the mark was used, and used largely, by the Gilbert Company in the business of selling certain varieties of improved taffeta of a softer finish. At about the time of the execution of the instrument it turned over to Eiseman & Co. all goods in its possession marked "Radium," but it appears that after November 23, 1905, the Gilbert Company continued to conduct the business in which it has used the mark precisely as it had before, with the single exception that it affixed the mark "Electra" instead of "Radium" to the goods it sold. The evidence is persuasive to the conclusion that this is exactly what both parties intended, that neither of them contemplated that the business in which the mark had been used should be turned over by the company to the firm. But the statute contemplates that, whatever extensions of the trade-mark through extensions of business may subsequently be legitimately acquired by the assignee, he shall take over the good will of the business in which prior to assignment the trade-mark has been used. Both are to pass together; the trade-mark shall not be conveyed to one, and the particular business in which it was used remain with the other. That seems to be the policy of the statute, expressed in sufficiently plain terms, and it is unnecessary to discuss the question whether this provision is a mere statement of existing law or is a new departure. It is not contended that the original owner of the trade-mark shall go out of the dry goods business, nor that it shall cease to sell silk dress goods in the piece to which it has not appropriated the trade-mark. But when a trader has sold some particular article under a selected name to such an extent as to secure registration, he has established a special business in which that trade-mark is used, and if the trade-mark becomes so valuable as to induce him to sell it, he must, as a condition of transfer under the statute, assign that special business with the trade-mark of which it was the parent. Eiseman & Co., therefore, acquired no rights under the alleged assignment which did not carry the special business. The suggestion of hardship, in that by subsequent action the assignor has defeated the assignment for which it received a valuable consideration, is not persuasive; they have their remedy against the company, if the transfer was not in fact what they were given to understand it would be. As to them the bill must be dismissed with costs.

Subsequently to November 23, 1905, the Gilbert Company wholly discontinued the use of the word "radium" on any goods whatever, and has not since used it, and intermediate that date and the bringing of this suit the word was used to a considerable extent by others in connection with dress goods in the piece. A case of abandonment is made out, and they are not entitled to relief by injunction. But it appears that prior to November 23, 1905, when the company was the owner of a valid unabandoned trade-mark defendants made infringing sales. Their amount was apparently small, and now that the controversy is here and has been tried on a voluminous record, it would seem that the ends of justice will be best subserved by sending the cause to a master to take proof of the small amount of damages and profits, so

that every phase of the controversy may be disposed of before appeal is taken. Inasmuch as the complainant company has not succeeded on the main case, the decree in its favor will be without costs.