## A. BOURJOIS & COMPANY, INC. *v.* KATZEL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 190. Argued January 8, 1923.—Decided January 29, 1923.

A foreign manufacturer and vendor of face powder sold to the plaintiff its business and good will in this country, together with its trade marks, registered under the Trade Mark Act; the plaintiff

re-registered the marks and went on with the business here, under the old name, buying the powder from the original concern. abroad and selling it in boxes bearing the trade mark, and so built up a profitable trade, the public associating the marks with the plaintiff's goods. The defendant bought and imported the product of the foreign concern in its genuine boxes, which bore labels closely resembling those of the plaintiff, and sold it here. *Held,* that such sales were an infringement of the plaintiff's trade marks and that a preliminary injunction was proper, under §§ 17 and 19 of the Trade Mark Act. P. 691.

275 Fed. 539, reversed.

CERTIORARI to a decree of the Circuit Court of Appeals reversing an order of the District Court granting a preliminary injunction in a suit to restrain infringement of trade marks.

*Mr. Hans v. Briesen* for petitioner.

*Mr. John B. Doyle,* with whom *Mr. John R. Rafter* was on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a bill to restrain the infringement of the trade marks " Java " and " Bourjois " registered in the Patent Office of the United States. A preliminary injunction was granted by the District Court, 274 Fed. 856, but the order was reversed by the Circuit Court of Appeals, one Judge dissenting. 275 Fed. 539. A writ of certiorari was granted by this Court. 257 U. S. 630. In 1913 A. Bourjois & Cie., E. Wertheimer & Cie., Successeurs, doing business in France and also in the United States, sold to the plaintiff for a large sum their business in the United States, with their good will and their trade marks registered in the Patent Office. The latter related particularly to face powder, and included the above words. The plaintiff since its purchase has registered them again and goes

on with the business that it bought, using substantially the same form of box and label as its predecessors and importing its face powder from France. It uses care in selecting colors suitable for the American market, in packing and in keeping up the standard, and has spent much money in advertising, &c., so that the business has grown very great and the labels have come to be understood by the public here as meaning goods coming from the plaintiff. The boxes have upon their backs: "Trade Marks Reg. U. S. Pat. Off. Made in France—Packed in the U. S. A. by A. Bourjois & Co., Inc., of New York, Succ'rs. in the U. S. to A. Bourjois & Cie., and E. Wertheimer & Cie."

The defendant, finding that the rate of exchange enabled her to do so at a profit, bought a large quantity of the same powder in France and is selling it here in the French boxes which closely resemble those used by the plaintiff except that they have not the last quoted statement on the backs, and that the label reads " Poudre de Riz de Java," whereas the plaintiff has found it advisable to strike out the suggestion of rice powder and has " Poudre Java " instead. There is no question that the defendant infringes the plaintiff's rights unless the fact that her boxes and powder are the genuine product of the French concern gives her a right to sell them in the present form.

We are of opinion that the plaintiff's rights are infringed. After the sale the French manufacturers could not have come to the United States and have used their old marks in competition with the plaintiff. That plainly follows from the statute authorizing assignments. Act of February 20, 1905, c. 592, § 10, 33 Stat. 727. If for the purpose of evading the effect of the transfer, it had arranged with the defendant that she should sell with the old label, we suppose that no one would doubt that the contrivance must fail. There is no such conspiracy here,

but, apart from the opening of a door to one, the vendors could not convey their goods free from the restriction to which the vendors were subject. Ownership of the goods does not carry the right to sell them with a specific mark. It does not necessarily carry the right to sell them at all in a given place. If the goods were patented in the United States a dealer who lawfully bought similar goods abroad from one who had a right to make and sell them there could not sell them in the United States. *Boesch* v. *Gräff*, 133 U. S. 697. The monopoly in that case is more extensive, but we see no sufficient reason for holding that the monopoly of a trade mark, so far as it goes, is less complete. It deals with a delicate matter that may be of great value but that easily is destroyed, and therefore should be protected with corresponding care. It is said that the trade mark here is that of the French house and truly indicates the origin of the goods. But that is not accurate. It is the trade mark of the plaintiff only in the United States and indicates in law, and, it is found, by public understanding, that the goods come from the plaintiff although not made by it. It was sold and could only be sold with the good will of the business that the plaintiff bought. *Eiseman* v. *Schiffer*, 157 Fed. 473. It stakes the reputation of the plaintiff upon the character of the goods. *Menendez* v. *Holt*, 128 U. S. 514. The injunction granted by the District Court was proper under §§ 17 and 19 of the Trade Mark Act. Act of February 20, 1905, c. 592, 33 Stat. 724, 728, 729.

*Decree of Circuit Court of Appeals reversed.*