**R. H. MACY & CO., Inc., v. MACYS, Inc.**
**No. 433.**

District Court, N. D. Oklahoma.
March 24, 1930.

Preston C. West, of Tulsa, Okl., and Edward S. Rogers, Allen M. Reed, and William T. Woodson, all of Chicago, Ill., for plaintiff.
Yancey & Fist, of Tulsa, Okl., for defendant.

KENNAMER, District Judge.

This is an action to enjoin the defendant corporation from unfairly competing with plaintiff by using the name it has adopted, and for trade-mark infringement. The plaintiff is R. H. Macy & Co., Inc., a New York corporation; the defendant, Macys, Inc., is an Oklahoma corporation. The evidence discloses that the plaintiff and its predecessors have been in business since 1858, and are engaged in the business of selling women's wearing apparel, as well as other merchandise, carrying on a very extensive volume of business. Plaintiff, having its place of business located in New York City, ships its goods all over the world, and has for a number of years had an established business with customers in the state of Oklahoma, including the city of Tulsa. The word "Macys" was registered in the United States Patent Office, as number 78,333. The trade-mark is inserted in merchandise sold by plaintiff, and such goods were sold and shipped into Oklahoma prior to the organization of the defendant corporation. The record indicates that plaintiff had sold approximately $5,000 worth of its merchandise in Tulsa a year prior to the organization of the defendant corporation, and that the plaintiff and its business was identified in Oklahoma and the city of Tulsa by the name Macys.

During the month of August, 1928, Macys, Inc., was organized under the laws of the state of Oklahoma to engage in the business of selling women's wearing apparel. The evidence establishes that the president of the defendant corporation knew of plaintiff, and consulted counsel to ascertain if the use of the name Macys would infringe plaintiff's rights. After its organization, the defendant was notified by plaintiff that it was infringing plaintiff's rights and was requested to discontinue. Thus, it is apparent that the defendant continued to use the name Macys after it had been notified of plaintiff's trade-mark, and that such a name was adopted by the defendant with knowledge upon the part of its officers and incorporators of plaintiff and its identity as Macys. An injunction against the adoption and use of the name Macys is the object of plaintiff's bill.

If plaintiff is to prevail in this action, it must be by reason of a property right vested in it. The United States Supreme Court, in the case of United Drug Company v. Rectanus Company, 248 U. S. 90, at page 97, 39 S. Ct. 48, 50, 63 L. Ed. 141, speaking through Mr. Justice Pitney, said:

"There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business."

The soundness of such reasoning is without question. On the other hand, when such a mark is employed in connection with an established business, it should be protected by courts of equity, to prevent unfair competition. In such instances, the holder of a trade-mark has a property right subject to protection, and its value depends upon the extent of the business to which the trademark or name is connected. In other words, if the name is well established and is used in connection with an extensive business, the adoption and use of a similar name would directly affect such a business. The property right is the expectancy of future business which grows around a trade-mark or trade-name used in connection with a well established business. An appropriation of such a name may interfere directly with an expectancy and deprive the owner of his selling market.

Another consideration justifying a court of equity in protecting a trade-mark or trade-name against infringement is the interest the public has in established names and marks. An adoption or appropriation of a name or mark might well deceive unsuspecting purchasers into thinking they are obtaining the goods to which the name or mark has become identified. This interest, when, if in fact it exists, by reason of such an established business, is alone sufficient to warrant protection of trade-marks and names.

A consideration of the facts in the instant case, in light of the principles herein set forth, establishes that the name Macys has been identified with the business of the plaintiff for a great many years, and that the business of the plaintiff extended into Oklahoma and to the city of Tulsa prior to the organization of the defendant corporation. The evidence discloses that the name Macys is connected with a well-established business, and it was equally well proven that such business extended to the place where the defendant employed the same name for the carrying on of a business similar to the one to which it was connected, and to which it had a distinct identity. A significant fact in the instant case is that the name was adopted by the defendant with knowledge upon the part of its officers and incorporators of plaintiff and its name, and too, that before the defendant had been engaged in its business a very long period of time, it was notified and requested to discontinue the use of the name. Thus, any efforts exerted by defendant to create a good will for the name Macys in Tulsa, Okl., were with notice and against the wishes of plaintiff. Defendant was not an innocent user of the name, and certainly is not the prior appropriator of it.

It is insisted upon the part of defendant that plaintiff's business did not extend into Oklahoma, and that it was the first user of such a name in this locality, and, further, that the name was taken from the given name of one of its incorporators, whose name is Morris; that Morris' given name was Moses and that the Jewish word meaning Moses is "Moesche," pronounced "Macy."

The latter contention is without merit, and, in view of the evidence in the case, is not worthy of serious consideration. The proposition urged that there is no competition between plaintiff and defendant because of the geographical distance between the stores operated by them is of importance. In submit-

ting this theory of defense, the cases of United Drug Co. v. Theodore Rectanus Co., supra, and Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713, are relied upon. The facts in the case at bar are different from those in the cited cases. In each of the cited cases, the second user of the trade-name had enjoyed the use of the name for a long period of time; had adopted and used it without knowledge that another was or had been using the same name, and was using it in an entirely different section of the country where a distinct identity and good will had been created for it. Probably the most significant difference in the facts in the instant case, and the cited cases, is that in the cases referred to the first and prior user had not extended his business into the locality where the subsequent user had created a good will for it. A quotation from the case of United Drug Co. v. Rectanus Co., supra, clearly illustrates the case to which it is applicable, viz.: "Mrs. Regis and her firm [the first user of the trade name], having, during a long period of years, confined their use of the 'Rex' mark to a limited territory wholly remote from that in controversy, must be held to have taken the risk that some innocent party might in the meantime hit upon the same mark, apply it to goods of similar character, and expend money and effort in building up a trade under it; and since it appears that Rectanus in good faith, and without notice of any prior use by others, selected and used the 'Rex' mark, and by the expenditure of money and effort succeeded in building up a local but valuable trade under it in Louisville and vicinity before petitioner entered that field, so that 'Rex' had come to be recognized there as the 'trade signature' of Rectanus and of respondent as his successor, petitioner is estopped to set up their continued use of the mark in that territory as an infringement of the Regis trade-mark." At page 415 of 240 U. S., 36 S. Ct. 357, 361, in the case of Hanover Star Milling Company v. Metcalf, it is said: "Into whatever markets the use of a trade-mark has extended, or its meaning has become known, there will the manufacturer or trader whose trade is pirated by an infringing use be entitled to protection and redress." The case was determined upon the precise facts and circumstances involved, which facts are entirely different from those herein presented.

A trade-mark has been protected and the exclusive right to its use established in a case where there was no deception, as the original article was being sold, being an imported item. A. Bourjois & Co. v. Katzel, 260 U. S.

689, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567. Certainly, a trade-mark is entitled to protection where there is possibility of deception, or of misleading the public.

In the instant case, the defendant should be enjoined from using the name Macys; first, because of the willful appropriation of the name with knowledge of its identity with plaintiff, and, secondly, because the adoption of the name is calculated to cause purchasers to falsely believe that the defendant is connected with the plaintiff. That plaintiff is entitled to injunctive relief in such a case has been judicially determined in cases involving similar facts. Buckspan v. Hudson's Bay Company (5 C. C. A.) 22 F.(2d) 721; Sweet Sixteen Co. v. Sweet "16" Shop, Inc. (8 C. C. A.) 15 F.(2d) 920.

Decree for plaintiff, enjoining the defendant from using or employing the name Macys in connection with the business being conducted by it.