27 C.C.P.A.(Patents)

**GEORG JENSEN & WENDEL, A/S v. GEORG JENSEN HANDMADE SILVER, Inc.**

**GEORG JENSENS SOLVSMEDIE, A/S v. SAME.**

**Patent Appeals Nos. 4317, 4318.**

Court of Customs and Patent Appeals.

April 29, 1940.

Jeffery, Kimball & Eggleston, of New York City (Oscar W. Jeffery, Harry G. Kimball, and Reginald Hicks, all of New York City, of counsel), for appellants.

Axel V. Beeken, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

These cases consolidated for hearing, being briefed and orally argued together, present appeals from decisions of the Commissioner of Patents affirming decisions of the Examiner of Interferences sustaining oppositions of appellee to applications filed by the respective appellants for the registration of certain trade-marks hereinafter more particularly described.

The cases present somewhat unusual features as will be seen from the following statement of facts:

It appears that Georg Jensen, of Copenhagen, Denmark, many years ago became a successful designer of gold and silver articles, such as tableware and jewelry, and that at some time prior to 1923 the Georg Jensens Solvsmedie, A/S, appellant in suit No. 4318, a corporation of Denmark, acquired from Jensen the exclusive right to manufacture the articles so designed and "the use of his name in connection therewith together with all patents, trade names and trade marks, and the exclusive right to sell all gold and silver articles and jewelry made by him personally or under his direction or * * * made from designs made by him, anywhere and especially the exclusive right of sale thereof in the United States of America." Of this corporation, Georg Jensen, P. A. Pedersen, and Thorolf Moller were directors.

Georg Jensen & Wendel, A/S, appellant in appeal No. 4317, described as a "company" organized under the laws of Denmark, seems also to have existed prior to 1923, and, as we understand it, engaged in the business of selling the articles manufactured by Georg Jensens Solvsmedie, A/S, at a store in Copenhagen. Jensen, Pedersen, and Moller were also connected with this company.

It may be said at this point that the term "Solvsmedie" is stated to mean silversmith, and the corporation is usually referred to in the record as "the Smithy." For convenience, we shall generally so refer to it hereafter. The company will generally be referred to as Jensen & Wendel.

In 1919, or a little later, a party by the name of Frederik Lunning was employed for a time either by Jensen personally or by Jensen & Wendel, and later by the Smithy. In 1922 Lunning was sent by the Smithy to the United States for the purpose of attempting to create a market here for the Jensen articles. With the details of his activities in this country during the early period of his visit we are not concerned. It is sufficient to say that apparently he became convinced that a market could be created, and that on August 31, 1923, a four-party contract was entered into, the Smithy being referred to as the party of the first part, Pedersen and Moller as the parties of the second part, Lunning as the party of the third part, and Jensen as the party of the fourth part. All of them signed the instrument.

The parts of the contract of interest here are embraced in the following excerpts from it:

"First. That the said party of the first part [its exclusive right of manufacture, sale, etc., having been recited] in consideration of one dollar, paid by the party of the third part to the party of the first part and other good and valuable consideration, receipt of which is hereby acknowledged, has granted, bargained and sold, and by these presents does grant, bargain and sell unto the party of the third part his personal representatives and assigns, the exclusive right, license, and privilege of selling all the gold and silver articles and jewelry manufactured by it, from designs made by the said Georg Jensen or others, together with the use of all patents, trade names, and trade marks in connection therewith, in the following named territory, namely:

"The United States of America, for the term of twenty years from the date of this agreement, * * *.

      *    *    *    *    *    *

"For the purpose of enabling the party of the third part, his personal representatives and assigns, to establish, acquire and enter upon, manage, conduct, continue, and carry on the business of selling the said gold and silver articles and jewelry manufactured by the said Georg Jensen Silversmith Corporation, its successors and assigns, the party of the first part does for itself, its successors and assigns, and the parties of the second and fourth parts do for their personal representatives and assigns, by these presents, covenanth, grant, promise and sgree to and with the said party of the third part, his personal representatives and assigns, that from and after the execution of this agreement, they will not at any time for the period of twenty years from and after the date hereof, either alone, or jointly with, or as agent for any person or persons, firms or corporations, except only as agent for said party of the third part hereunto, his personal representatives or as-

signs, and either directly or indirectly sell any gold and silver articles or jewelry in the United States of America or to any person or firms for resale in the United States of America, nor set up, make, carry on or encourage, or be engaged or interested in any opposition to the business established and to be established in the United States of America by the said party of the third part, his personal representatives and assigns, nor to do anything to the prejudice thereof.

"On the other hand, the third part[y] his personal representatives, assigns or successors engage themselves neither direct or in connection with others nor as agent for who ever it may be, to sell or work for the sale of gold, silverwork or jewelry than the said Georg Jensen Silversmith Corporation. Copenhagen."

In January 1925 a supplemental contract was entered into by the same parties which extended Lunning's rights under the original contract for a period of eighty years, making the total period one hundred years.

In April 1926 a third contract was executed by the same parties in which it was recited that contracts whereby the Smithy had acquired from Jensen the rights of manufacture and sale as above stated, had been abrogated without the knowledge or consent of Lunning. The purpose of such third contract seemingly was principally to assure that the rights which Lunning had acquired would be protected by Jensen and the other Denmark parties.

It is proper to say that it is agreed that Lunning, by the terms of the contracts, became an independent dealer and not an agent. That is to say, he purchased the articles outright at his own risk and advertised and sold them upon such terms as he elected.

It was a part of the contract that Lunning should purchase certain designated quantities of goods each year during a period of ten years and that upon this condition being complied with the contract should become "irrevocable." It is in evidence that the condition was complied with.

All, or practically all, of the articles so purchased bore marks showing them to be Jensen's designs, and were marked also to indicate the country of origin.

It appears that on November 29, 1921, the Smithy obtained registration in the United States Patent Office of a trade-mark (certificate No. 148,928) embracing the words "Georg Jensen," fancifully arranged in an oval design. Its registration in this country appears to have been based upon a similar registration in Denmark, which latter was cancelled under the laws of Denmark on September 20, 1929, as a result of which appellants concede the expiration on that date of the United States registration. Reference has been made to it here because of the comments upon it in the briefs of the respective parties before us. We do not regard it as having any bearing upon the issues to be determined, except as it constitutes a part of the history of the case. Whatever may have been its status during the time it was in effect, Lunning's right to its use in the United States was evidently fixed by the contracts above recited.

In 1928 Lunning brought about the incorporation of his business under the laws of the State of New York, the name given the corporation being Georg Jensen Handmade Silver, Inc., which is the appellee in these cases. All his interests, rights, etc., as an individual under the contracts were transferred to the corporation so organized of which Lunning retained full control.

On March 22, 1932, appellee registered the letters "Gi" (certificate No. 292,638) in the United States Patent Office as a trade-mark for the articles in which it was dealing, and on April 26, 1932 registered (certificate No. 293,530) the words "Georg Jensen," fancifully arranged in an oval design, resembling somewhat the design of registration 148,928 to the Smithy above discussed. It is noted that in No. 293,530, ownership was claimed by appellee of No. 148,928. Both of appellee's applications were filed on the same date, October 3, 1931.

The brief on behalf of appellee gives the following explanation of its purpose in securing its registrations: "The business established by Lunning, and now owned by opposer, turned out to be a huge success, whereupon the two applicants invaded the market created by Lunning and sought to reap where they had not sown. Accordingly, Jensen & Wendel commenced to send propaganda into this country, inviting people to send their orders direct to Copenhagen and such orders would then be filled by mail or by delivery to steamers leaving Hamburg, Cherbourg, Plymouth, etc., so that it would not even be necessary to go near the Copenhagen store to purchase the silver. The silver so sent into this country carried the same trade marks as the silver

sold by Lunning and opposer and which had come to indicate opposer's business as the source for the silver in the United States. The Smithy also sent a spy, ostensibly for the purpose of ascertaining whether or not opposer was manufacturing the silver here, but this spy also obtained employment in opposer's store and was caught copying opposer's price lists. Opposer protested against all this but in vain, whereupon opposer obtained trade mark registrations Nos. 292,638 and 293,530 and recorded these registrations at the ports of the United States, thereby stopping the unauthorized entry of the silver sent by the Smithy and by Jensen & Wendel into this country."

The brief also asserts: "The public in this country having come to identify the trade marks with opposer's business and the silver opposer sells, would not, of course, buy unmarked silver and the Smithy and Jensen and Wendel therefore filed the applications here in controversy with the double object in view of evading opposer's recording at the ports and at the same time satisfying the American public."

Whatever may have been the motives of the respective appellants, the facts are that on September 29, 1932, applications were filed by them in the United States Patent Office for registrations. The application involved in suit No. 4317 was for the letters "G J," enclosed in a rectangle, the "J" being quite fancifully formed, and the application involved in suit No. 4318 was for the same letters in a different arrangement. As amended, both applications named substantially the same articles as those named in the registrations of appellee.

Appellee filed notices of opposition in both instances, pleading its prior registrations, and appellants filed answers. Under the view which we take of the case it is unnecessary to analyze the notices and answers in detail. Appellee alleged that confusion in the mind of the public would result from the registration sought by appellants and cause it irreparable loss and damage. The notices also set forth the rights which appellee claimed under the contractual relations which have been described. Appellants, in their respective answers, made general denials of many of the allegations, and it is insisted, in substance, before us that appellee's rights under the contracts are not so broad as claimed by it.

■ Much of the brief on behalf of appellants is devoted to arguing that in

selling and offering to sell their merchandise to individuals in the United States, frequently shipping it direct to such purchasers, they are not violating the contractual provisions, and it is insisted that it was the duty of the Commissioner of Patents and that it is our duty to pass upon this question. We do not deem it necessary or proper to do so in this proceeding further than to say that, in our opinion, appellee clearly had the right, by reason of the provisions of the contracts, to secure in its own name the registrations which it obtained and which it pleaded in its notices of opposition. Charles Lalanne v. F. R. Arnold & Co., 39 F.2d 269, 17 C.C.P.A., Patents, 925; Scandinavia Belting Co. v. Asbestos & Rubber Works, 2 Cir., 257 F. 937; A. Bourjois & Company, Inc., v. Katzel, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464, 26 A.L.R. 567. Indeed, it may be said that appellee's right so to do is not brought in question here, nor is the validity of its marks assailed. Appellants' position rather seems to be that they also have the right to the *use*, in the United States, of the marks, or marks similar in character. We are not called upon here to determine what the rights of appellants may be to use of the marks under the somewhat peculiar state of facts existing.

We think appellee, upon the record presented, is the owner of its registered marks and that registration of any mark which would conflict therewith must be denied so long as appellee's registrations stand.

■ So, the ultimate question relates to the matter of confusion. As has been stated, one of appellee's marks, pleaded in both cases, consists of the letters "Gi." It is in evidence that the letters i and j are used interchangeably in the Danish language. It might be remarked too that at one time they were so used in the English language, and that now they are not infrequently given the same sound in pronunciation. Also, it is clear, as said in the decision of the commissioner: "* * * it appears that all three parties deal in merchandise that is not only identical, but is manufactured by the same Danish concern; and that their marks are all derived from the name Georg Jensen, * * *."

We are quite in agreement with the commissioner's holding: "That confusion would result if the mark of either applicant were used concurrently with opposer's mark seems too clear to merit discussion."

The various contentions on behalf of appellants, together with the authorities cited, have been carefully examined. Except as above indicated, they are not found to be relevant to the issue necessary to be here determined.

For the reasons stated, the decisions in both appeals are affirmed.

Affirmed.