**James M. SPENCER, Jr., doing business as Hurricane Marine Products, Plaintiff,**

v.

**VDO INSTRUMENTS, LIMITED, a Canadian Corporation, Wood Marine Inc., a Michigan Corporation and VDO Tachometer Werke Adolph Schindling GmbH., a Corporation of the Federal Republic of Germany, Defendants.**

**Civ. No. 23515.**

United States District Court
E. D. Michigan, S. D.

March 31, 1964.

Clarence B. Zewadski, Whittemore, Hulbert & Belknap, Detroit, Mich., for plaintiff.

Alfred E. Wilson, Wilson, Settle & Craig, Dearborn, Mich., Ernest G. Montague, New York City, of counsel, for defendants VDO Instruments, Limited, and VDO Tachometer Werke Adolph Schindling GmbH.

James B. Dritsas, Detroit, Mich., Robert G. Mentag, Detroit, Mich., of counsel, for Wood Marine Inc.

FREEMAN, District Judge.

This is an action by James M. Spencer, Jr., d/b/a Hurricane Marine Products, plaintiff, against VDO Tachometer Werke Adolph Schindling GmbH., a corporation of the Federal Republic of Germany (hereinafter referred to as "VDO"), VDO Instruments, Limited, a Canadian corporation (hereinafter referred to as "VDO, LTD."), and Wood Marine, Inc., a Michigan corporation, based upon a 3-count amended complaint, to restrain the defendants from using the trade-mark "SUM LOG" issued to plaintiff by the United States Patent Office, on a com-

bined nautical speedometer and mileage recorder, and also to recover damages for infringement of such trade-mark and breach of contract. The defendants, by way of counterclaims for declaratory judgment, seek to declare void the registration of said trade-mark by plaintiff and also seek injunctive relief and damages arising from an embargo caused by such trade-mark registration. This matter is now before the Court on the motion of defendants, VDO and VDO, Ltd., for summary judgment to dismiss the complaint and grant judgment on the counterclaim.

The nautical instrument in question was invented by one Rune Kock of Sweden and is now being manufactured by the defendant VDO. It was formerly made by A. B. Maskinaffaren Stieltjes of Stockholm, Sweden (hereinafter referred to as "Stieltjes") and later by Ingeniorsfirman AB K. G. Knutsson of Stockholm, Sweden (hereinafter referred to as "Knutsson"), under licensing arrangements with Kock. The licensing arrangements with Stieltjes were terminated in 1960 and early in 1961 Knutsson arranged with VDO to take over production and sales of the instrument, including export sales after July 1, 1961.

One Nils Lucander d/b/a Hurricane Marine Co. of Detroit, Michigan, purchased some of these instruments from Stieltjes in 1958 and 1959 and as a result of some negotiations between Lucander's attorney, William H. Dance, and Stieltjes in early 1960, Stieltjes wrote a letter to Lucander dated April 8, 1960, granting his Hurricane Marine Co. "exclusive sales right of the SUM-LOG in North America as long as we are satisfied with your sales result", and also stating: "We have learned from your letter that you are planning to incorporate other persons in your firm in order to have an improved financial backing. Should these plans be realized we are quite willing to transfer the exclusive right to you under an other name of your firm."

In June, 1960, Lucander and the plaintiff, James M. Spencer, Jr., formed a cor-

poration under the name of Hurricane Marine Co., a Michigan corporation, and in December, 1960, this corporation was dissolved and allegedly transferred the aforesaid exclusive sales rights for the instrument in question to plaintiff.

On March 13, 1963, the United States Patent Office granted to plaintiff the trade-mark "SUM-LOG" based upon application filed February 24, 1961, and thereafter plaintiff registered such trade-mark with the United States Treasury Department, thereby creating an embargo against any further shipments of devices bearing the mark "SUM-LOG" into the United States. As a result thereof, the defendants VDO and VDO, LTD. have been prohibited from shipping the instruments in question bearing the mark "SUM-LOG" into the United States.

The only issue presented to the Court by briefs and oral arguments of the parties in connection with defendants' motion for summary judgment is the validity of the registration of the trademark "SUM-LOG" by plaintiff.

Plaintiff contends that he has exclusive sales rights to the nautical devices in question by successive tranfers from Lucander, and that VDO assumed the obligations of Stieltjes under the exclusive sales grant of the said device by Stieltjes to Lucander. Plaintiff further contends that he became entitled to register the mark "Sum-Log" as his trade-mark because plaintiff and his predecessors in interest came to be known as the source of the said nautical device as a result of importing and selling such device under the aforesaid exclusive sales grant.

Defendant contends that plaintiff and his predecessors in interest were merely agents of the manufacturers of this nautical device or importers thereof and, therefore, obtained no rights of ownership in the mark "Sum-Log" and, consequently, the registration of the mark by plaintiff as his own is invalid.

Section 1 of the Trade-Mark Act of 1946 (15 U.S.C.A. § 1051) provides: "The owner of a trade-mark used in commerce may register his trade-mark under this

Act on the principal register hereby established * * *."

In Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60, Saxlehner, a resident of Hungary, had agreed with Apollinaris Company of London that the latter should have the exclusive right to all Hunyadi water in Great Britain and the United States, and the Court thought that the agreement did not constitute the company Saxlehner's agent and that the company had no power to bind Saxlehner by its conduct or its admissions in respect to his trade-mark. In that case, as in the instant case, there was no agreement made as to the use of the trade-mark in the United States. The Court said, in effect, that the exclusive seller in the United States did not have such a special ownership of the trade-mark as entitled him to its registration during the period of exclusive use, and at p. 37 of 179 U.S., at p. 14 of 21 S.Ct. stated: "If the Apollinaris Company were not his agent for the protection of his rights in the United States, then it was incumbent upon him to assert such rights personally or through some other recognized medium."

In Scandinavia Belting Co. v. Asbestos & Rubber Works, 2 Cir., 257 F. 937, the Court recognized that a mere exclusive seller in the United States acquired no "ownership" to a trade-mark on the goods it purchases, but said that an agency was conceded in the case and the right to the exclusive use of the trade-mark in the United States was expressly granted and, therefore, the exclusive seller in the United States could register the trade-mark. At page 955 of 257 F. the Court said: " * * * one who has the exclusive right to use a trade-mark in the United States has such a special ownership therein as entitles him to its registration during the period of his exclusive use. 'Ownership' is the right by which a thing belongs to some one in particular to the exclusion of all others." In the case at bar, no agreement is claimed to have been made for exclusive use of the trade-mark in the United States, and it is clear that the exclusive sales arrangement did not grant exclusive use of the trade-mark to Lucander or his alleged successors in interest.

It is also interesting to note that the facts in the present case are similar to those in the Saxlehner case and quite different from those in the Scandinavia Belting case. In the Saxlehner case, as in this case, no agreement was made regarding the trade-mark. Also, the company in that case reserved the right to cancel the contract. In the present case, the "agreement" was to continue only as long as VDO was satisfied with the sales results. In the Scandinavia Belting Company case, exclusive use of the trade-mark in the United States was expressly granted, and no right to cancel the contract existed in either party.

In Omag Optik Und Mechanik A.G. v. Weinstein, D.C., 85 F.Supp. 631, an exclusive distributor undertook all expenses of promotion, including advertising, travelling costs and the supply of display cabinets to individual dealers. The distributor did not take any goods on consignment, but instead they were transferred by outright sale. The Court held that in the absence of inequitable conduct on the part of the manufacturer, a distributor who employs the mark of his principal, does not acquire a proprietory interest in the mark that will serve to extinguish the rights of the manufacturer. The Court also said that Weinstein as exclusive distributor had a registrable interest in the mark. Due to the fact that the Court cited the Scandinavia Belting case and that there were several communications between the parties where the term "agent" was used, it is apparent that the Court found the "exclusive distributor" to be like the "agent" in the Scandinavia Belting Co. case and not like the "exclusive seller" in the Saxlehner case.

In United States Ozone Co. v. United States Ozone Co. of America, 7 Cir., 62 F.2d 881, there was an exclusive sales agency and the agent wanted to continue to use a trade-mark when the relationship terminated. The Court held that the exclusive agent did not acquire any perma-

nent rights to the trade-mark. There was apparently more than an "exclusive seller" arrangement in that case.

In DuPont Cellophane Co. v. Waxed Products Co., D.C., 6 F.Supp. 859, at page 879 the Court said:

"Defendant questions the agency of Euler, but whether the contract between him and the French company be defined as one of general agency or not, the fact remains that under that contract he was an exclusive distributer in this country of the product of the French factory which bore the trade-mark 'Cellophane' and acquired a special right and interest in the trade-mark. Upton on Trade Marks, p. 23."

In view of the preceding cases discussed by this Court, it can only be assumed that when the Court in Cellophane referred to "exclusive distributor", they meant a relationship involving more than an "exclusive seller".

In a more recent case, Porcelaine De Paris, Sarl v. I. Freeman & Son, Inc., 118 U.S.P.Q. 369, the Court said: "As a mere importer and reseller of petitioner's goods bearing petitioner's marks, respondent acquired no right of ownership in petitioner's marks or any part or component of such marks. Respondent was not entitled to the registration of the mark and under the facts here, damage to petitioner from the continued existence of the registration will be preserved." Sales had been made to others than I. Freeman & Sons, Inc. In the instant case, sales of nautical instruments bearing the trade-mark "Sum Log" were purchased in Sweden for resale in the United States by Lucander and were shipped to Lucander and his successors f. o. b. Sweden. Similar sales were made to defendant Wood Marine Inc. of Detroit, Evernia Trading Co. of California, and defendant VDO, Ltd. of Detroit.

In Mackie-Lovejoy Mfg. Co. v. Birnbaum, 102 U.S.P.Q. 38, it was stated: "An importer of trade-marked articles does not acquire rights in the trademark used by a foreign manufacturer to identify its goods by importing the articles and selling them in this country."

In Champion Spark Plug Co. v. Reich, 8 Cir., 121 F.2d 769, p. 773, it was stated:

"Ordinarily when a manufacturer parts with his goods, and they go upon the market, the purchaser may use them or sell them without removing the trade-mark of the manufacturer. Bourjois & Co. v. Katzel, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464; Garst v. Hall & Lyon Co., 179 Mass. 588, 61 N.E. 219, 55 L.R.A. 681; Standard Oil Co. v. California Peach & Fig Growers, D.C.Del., 28 F.2d 283, 285; Vitascope Co. v. United States Phonograph Co., C.C., 83 F. 30; 63 C.J. § 81, page 380.

"But the purchaser of the goods does not acquire ownership of the trademark; and he cannot sell such goods bearing the manufacturer's trademark after he has changed or altered the goods so that they no longer represent the original character and excellence which the trade-mark indicates. Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731; Coca-Cola Co. v. Bennett, 8 Cir., 238 F. 513; Ingersoll v. Doyle, D.C.Mass., 247 F. 620; General Electric Co. v. Re-New Lamp Co., C.C.Mass., 128 F. 154; Auto Acetylene Light Co. v. Prest-O-Lite Co., 6 Cir., 264 F. 810; Champion Spark Plug Co. v. Emener, D.C. Mich., 16 F.Supp. 816, 823."

In Bourjois & Co. v. Katzel, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464, the Court held that a distributor of the goods of a foreign manufacturer acquires rights of ownership in the trade-mark affixed to these goods where the trade-mark itself with the appurtenant selling business is transferred to the distributor. This is not the situation, of course, in the case at bar.

It is, therefore, important to determine whether plaintiff is a mere exclusive seller or an agent. Tiffany on Agency states:

"An agent in the broadest sense is a person authorized by another, called the principal, to act on his behalf. An agent in the narrower

sense in which the term is used to distinguish the person to whom it is so applied from other so-called agents, is a person authorized by another, called the principal, to act on his behalf, and represent him in bringing him into legal relation with a third person."

In Restatement (Second), Agency (1958), it is stated: "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Also, "A principal has the right to control the conduct of the agent with respect to matters entrusted to him."

Stieltjes and its successors had no authority to control the conduct of Lucander or his successors. Goods were sold outright to plaintiff and his predecessors and they then acted on their own behalf; they were not required to take any specified quantity of the nautical instruments; they could fix their own price and took the risk of any loss. It is clear that no agency relationship existed.

Plaintiff admitted in his reply brief (p. 18) that "Plaintiff has always claimed that it was not acting in behalf of the foreign company(s), and never was a distributor or agent; plaintiff was always acting in its own behalf. Further plaintiff was not licensed by anyone to make and sell—this would imply a royalty agreement which was not present, and which was never contemplated by any of the parties."

Plaintiff has argued that he is entitled to the trade-mark because he was the exclusive distributor of Sum Log in the United States and the mark has become identified with him. But the fact remains that defendant VDO and its predecessors had registered and used the mark Sum Log as a trade-mark and, therefore, as a matter of law, plaintiff being a mere "exclusive seller" was not entitled to register the mark as his own. Plaintiff has cited no case in which an "exclusive seller" has obtained a permanent right to a trade-mark put on .. product by the manufacturer thereof and generally used by the manufacturer as his mark.

Plaintiff also relies on Overhamm v. Westfall, 271 App.Div. 492, 66 N.Y.S.2d 371. Defendant in that case was a packager who added his own trade-mark with that of the manufacturer on the containers. The Court commented that "the business in perfumes under the names 'White Shoulders', 'Menace' and 'Gay Diversion' was built up by plaintiff (an exclusive distributor). Although defendants owned the trade-marks, the public association of the scent names was with the name 'Hartnell' and they became trade-marks 'connected' with Hartnell products, as to which plaintiff had exclusive distributor's rights under his contract with defendant Westfall, and the value of the names lay entirely in a public acceptance derived from plaintiff's efforts and expenditures." This case thus clearly dealt with how an owner of trade-marks could lose the right to use them. The Court did not say that the manufacturer lost rights to its trade-mark "Hartnell". Nor did the Court decide that the scent names belonged to the exclusive distributor. The Court thus was not dealing with the problem involved in this case.

There being no genuine issue as to any material fact concerning the sales arrangement between plaintiff and his alleged predecessors and defendant VDO and its predecessors, it is clear as a matter of law that the registration of the mark "Sum Log" by plaintiff as his trade-mark is void, and defendants VDO and VDO, Ltd. are, therefore, entitled to summary judgment against plaintiff as to count 1 of the amended complaint and count 1 of the counterclaim of said defendants, insofar as the relief therein sought is determined by and consistent with the foregoing opinion of this Court.

An appropriate order may be submitted.