**AMERICAN HONDA MOTOR CO., INC., a California corporation, Plaintiff,**

v.

**CAROLINA AUTOSPORTS LEASING AND SALES, INC., a North Carolina corporation, Kehler Industries, a Canadian corporation, Dan E. Davis and Gordon Kehler, individuals, Defendants.**

**No. C–C–86–284–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 17, 1986.

A. Ward McKeithen, Samuel D. Walker, Robinson, Bradshaw & Hinson, Charlotte, N.C., and J. Donald McCarthy, Lyon and Lyon, Los Angeles, Cal., for plaintiff.

Hugo A. Pearce, III, Hamel, Helms, Cannon & Pearce, Dalbert U. Shefte, Shefte Pinckney & Sawyer, James D. Myers and Blas P. Arroyo, Bell, Seltzer, Park & Gibson, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Plaintiff's Motion for a preliminary injunction to arrest Defendants' "gray marketing" in Honda automobiles, precluding Defendants from holding themselves out as authorized distributors or dealers in Honda products, from importing into the United States or brokering or selling products bearing a Honda trademark and from otherwise trading on the goodwill of American Honda.

The arguments were heard by the Court on September 29, 1986 at Charlotte, North Carolina. The Plaintiff was represented by A. Ward McKeithen, J. Donald McCarthy and Dale Nelson, Attorneys at Law.

The Defendants were represented at the hearing by Dalbert U. Shefte, Hugo A. Pearce III, and Blas P. Arroyo, Attorneys at Law.

## FACTS

American Honda Motor Company, Inc. (AHM), a California corporation, is a distributor and wholly owned subsidiary of Honda Ltd. of Japan ("Honda Co.").

The two companies have several common directors and officers including, among others: The Chairman of the Board of AHM is also Executive Vice President of Honda Co. The president and director of AHM is also senior managing director of Honda Co.

There are several more officers of AHM who are also employees of Honda Co.

Marks Motors of Guam (Marks) is an authorized distributor for Honda Co. Carolina Autosports Leasing and Sales, Inc. (Autosports) brokers Honda automobiles on behalf of Kehler Industries (KI). Autosports is a North Carolina corporation. KI is a Canadian corporation. Dan Davis organized Autosports; Davis and Autosports are the local representatives for KI.

AHM is the exclusive distributor of Honda products in continental United States and has been for over twenty years. In 1982 Honda of America (HAM), a separate company, began production of 4-door Accords which are sold and distributed by AHM.

In 1985, KI in response to requests from a U.S. Honda dealer arranged for the purchase of new Hondas from Marks for delivery in 1986. Since then, KI has brokered 391 Hondas from Marks, 69 of which were brokered through Autosports to customers in Maryland and Indiana. KI has never sold any Hondas to anyone in North Carolina.

Neither KI nor Autosports, nor Marks, provide any type of warranty to the ultimate customer. However, the dealers who sell these cars apparently obtain a warranty from independent warranty services.

The automobiles brokered by KI are identical to the automobiles distributed by AHM.

The owner of the Honda trademarks is Honda Co. which registered those marks with the U.S. Patent and Trademark Office to Honda Co. on April 4, 1967. AHM is the exclusive licensee of the Honda marks in the United States.

The Plaintiff, AHM, seeks a preliminary injunction to arrest Defendants' gray marketing in Honda automobiles, precluding Defendants from:

(1) holding themselves out as authorized distributors or dealers in Honda products;

(2) Importing into the United States or brokering or selling products bearing a Honda trademark;

(3) From otherwise trading on the "enormous" goodwill AHM has built up in the Honda marks in this country.

The Plaintiff does not seek an injunction which would preclude the Defendants from dealing in used cars.

## DISCUSSION

The Plaintiff alleges three causes of action:

(1) For false designation of origin and false description under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

(2) Trademark infringement arising under the trademark laws of the United States, Title 15 U.S.C. § 1114.

(3) Unfair competition.

There are four factors to be considered by the Court on a motion for a preliminary injunction:

(1) Plaintiff's likelihood of success on the merits;

(2) Whether Plaintiff will suffer irreparable injury if the preliminary injunction is denied;

(3) What injury, if any, there will be to Defendants if the preliminary injunction is granted; and

(4) Where the public interest lies.

*Blackwelder Furniture Co., et al. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189, 194 (4th Cir. 1977).

Before considering the first factor, the trial court should consider the balance of hardship test. The two more important factors are those of probable irreparable injury to the plaintiff without a decree and of likely harm to the defendant with a decree. *Blackwelder, supra,* at pp. 195 and 196.

Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer harm before a decision on the merits can be rendered. *Wright & Miller, Federal Practice and Procedure:* Civil Section 2948.

The Plaintiff argues:

(1) In its brief discussing the balance of the hardship between Plaintiff and Defendants, on Page 23, the Plaintiff contends:

American Honda is the exclusive licensee of the Honda marks in the United States and defendants are infringing those marks and damaging the goodwill and reputation of American Honda.

(2) The harm AHM's goodwill and reputation is incalculable and irreparable.

(3) The harm to the Defendants would be minimal if a preliminary injunction is granted.

As to the first argument, the Honda mark is owned and registered by Honda Co., and is placed on the automobile manufactured by Honda Co. The fact that the Defendants have purchased Honda manufactured automobiles with the Honda trademark is certainly not an infringement of the Honda mark by Defendants.

As to the harm to AHM's reputation and goodwill, that is Honda Co.'s reputation and goodwill generated by Honda Co.'s production of reliable products.

The goodwill owned by the Honda Co. has been built not so much by AHM but by the fact that the Honda automobile has become synonymous with reliable transportation at a reasonable price. If the Defendants are "free riding" it is because they sell a genuinely good product which has captured the American market from the American automobile manufacturers who have for too long been able to sell shoddy workmanship at an inflated price.

As to Plaintiff's argument that the harm to the Defendants would be minimal, the balance of hardship weighs heavily in Defendants' favor.

In balancing the harm as between the parties, it is clear that the only source of business for the Defendants are the dealers who cannot obtain enough cars from the Plaintiff to satisfy the demand for

them. Thus, the cars sold by Defendants to the dealers are cars which the Plaintiff is unable to sell because it does not have enough to supply them. The greatest harm would appear to be to the Defendants who would be deprived of an opportunity to sell vehicles. The Plaintiff is apparently selling all the vehicles it can obtain.

As to the first factor, the Plaintiff's likelihood of success, the Plaintiff contends that it will prevail on the merits because the importation of gray market goods is contrary to a well established law citing *A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923), and *Coalition to Preserve the Integrity of American Trademarks v. United States*, 790 F.2d 903 (D.C.Cir.1986), and *Norman M. Morris v. Weinstein*, 466 F.2d 137 (5th Cir.1972), and other cases, contending that AHM, as the exclusive U.S. distributor of Honda products who developed a separate independent goodwill in America, has the right to protect that goodwill, and to that end, is entitled to a preliminary injunction directed against Defendants' use of Honda marks.

Title 19, U.S.C. § 1526(a) provides in pertinent part: " ... it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise ... bears a trade mark owned by a corporation ... created or organized within the United States and *registered in the Patent Office* [Patent and Trademark Office] *by a person domiciled in the United States....*" (Emphasis added).

There is no contention that the trademark on the automobiles imported by Defendants are copied or simulated and therefore this section (1124) has no application here.

In *Katzel*, the Plaintiff purchased the business of a foreign manufacturer and vendor of face powder together with the manufacturer's goodwill and trademark which the *plaintiff* reregistered and subsequently built up a profitable trade. The defendant bought and imported the product of the foreign manufacturer in the genuine boxes which bore labels closely resembling those of plaintiff. The Court held:

> We are of the opinion that the plaintiff's rights are infringed. After the sale the French manufacturers could not have come to the United States and have used their old marks in competition with the plaintiff.... If for the purpose of evading the effect of the transfer, it had arranged with the defendants that she should sell with the old label, we suppose that no one would doubt that the contrivance must fail.

In *Katzel* there was no relationship between the manufacturer and the Plaintiff. In the case at bar the Plaintiff is the wholly owned subsidiary of the manufacturer who is selling automobiles to brokers who are importing them into the United States, and further the Plaintiff has not registered the trademark with the Patent Office, as had the Plaintiff in *Katzel*.

The Plaintiff's first cause of action is for false designation of origin and false description under Section 43(a) of the Lanham Act, Title 15, U.S.C. § 1125(a) which provides in pertinent part:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, ... a false designation of origin, or any false description or representation, including words or symbols tending falsely to describe or represent the same and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

There is no evidence or contention by the Plaintiff that there is any false designation or origin, or any false description or representation. The automobiles sold by the Defendants are manufactured by the registered owner of the trademark—Honda Co.

The Plaintiff cites *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154

(1st Cir.1977) for the proposition that even if it were a nonexclusive licensee, American Honda has standing to sue for injunctive relief under § 43(a) of the Lanham Act. In that case *Quabaug* had been granted a sale and exclusive right and license in the United States by Vibram to use its trademark on soles, heels, and other footwear-related goods, and the right to enforce the licensed trademark right against infringers. The defendant, Fabiano, had begun to import and sell boots in the U.S. which were not fitted with soles, manufactured by Vibram, but which bore a trademark similar to Vibram's trademark, even though the defendant had advertised that its boots had "Vibram" soles. The Court held that under § 1125(a) the plaintiff had standing to sue regardless of whether he is a registrant of a trademark because under § 1125(a) the basis for an action under that section is use of a mark which is likely to cause confusion, or to deceive purchasers concerning the source of the goods and one who may suffer adverse consequences from a violation of § 1125(a) has standing to sue regardless of whether he is a registrant of a trademark.

The trademark in the case before the Court is genuine and is affixed by the manufacturer to a genuine vehicle.

The Plaintiff's second cause of action is for trademark infringement arising under the trademark laws of the United States, Title 15, U.S.C. § 1114. That statute in pertinent part reads:

(1) Any person who shall, without consent of the *registrant* (emphasis added)—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a *registered* mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to decieve; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution or advertising of goods or services or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive shall be liable in a civil action by the *registrant* (emphasis added) for the remedies hereinafter provided. . . .

The registrant is Honda Co. The automobiles are genuine Honda automobiles manufactured by Honda Co. The Honda trademark was applied by Honda Co., the registered owner of the trademark. Honda Co. sold the automobiles with its trademark affixed. Honda Co. owns 100% of AHM.

In *Katzel, supra,* the manufacturer was selling to a competitor of the plaintiff which had bought and re-registered the manufacturer's trademark. The plaintiff in *Katzel* was not related in any way with the manufacturer which was selling its products to defendant.

The Court recognizes that there is a disagreement between the 2nd Circuit and the D.C. Circuit, as to customs regulations implementing 19 U.S.C. § 1526.

The D.C. Circuit in *Coalition to Preserve the Integrity of American Trademarks v. U.S.,* 790 F.2d 903 (D.C.Cir.1986) (COPIAT) involved customs regulations implementing 19 U.S.C. § 1526 (1982) and 15 U.S.C. § 1124 (1982). The regulations governed the situation which arises when a foreign producer creates an American subsidiary that then registers the American trademark with distribution in the U.S. to be exclusively controlled by the American subsidiary. The regulations promulgated by the U.S. Customs Service permitted the importation of such goods, *inter alia,* if the American and foreign trademarks are owned by the same or affiliated entities. The district court upheld the regulations, and the Court of Appeals reversed on the grounds that from the court's review of the history of the development of the statutes involved and the Legislative history that the Custom Service's interpretation of the

statute did not display the necessary "thoroughness, validity, and consistency" to merit judicial acceptance.

One month after COPIAT, *Olympus v. U.S.*, 792 F.2d 315 (2nd Cir.1986) was decided. In that case Olympus Corporation ("Olympus") was a New York wholly owned subsidiary of Olympus Optical Company, Ltd. ("Olympus Optical") a Japanese corporation that manufactures Olympus-brand products, including cameras. Olympus is the exclusive distributor of Olympus Optical's Japanese-manufactured products in the United States, and it owns the rights in this country to the Olympus trademark which it has registered. Retailers had purchased and would potentially purchase the goods manufactured abroad from authorized distributors and then imported by persons other than the trademark holder and without the markholder's permission.

After reviewing the factual history of the regulations, and making reference to COPIAT, the Second Circuit held that congressional acquiescence in the longstanding administrative interpretation of the statute legitimates that interpretation as an exercise of customs' enforcement discretion out of concern for the underlying administrative problems of Customs. The Court pointed out that the markholder still has rights under the statute in that he may pursue private remedies against the importer notwithstanding Customs' failure to exclude the goods.

It would appear that the law is not "settled" as contended by Plaintiff, as to the implementation of 19 U.S.C. § 1526 by customs regulations.

This Court does not find that the Plaintiff has the requisite "likelihood of success" to warrant the granting of a preliminary injunction.

(1) There is no evidence that the cars sold by the Defendants are not genuine Honda automobiles, manufactured by Honda Co.

(2) There is no evidence the trademark has been copied. The evidence is the trademark is owned by Honda Co. and affixed by Honda Co.

(3) There is no evidence of false designation of origin or false description or representation.

(4) The Plaintiff is licensed by Honda Co. to use the trademark but the trademark is owned and registered with the Patent Office by Honda Co., not by AHM.

(5) The Agreement between Honda Co. and AHM states very clearly that Honda Co. has adopted and now is the owner of the mark "HONDA".

(6) The Plaintiff, under its agreement with Honda Co., agrees to control each dealer " ... to the end that ... 2. No dealer will improperly use any Licensed Trademark whereby the purchasing public is likely to be deceived as to the source or origin of any goods or services offered by such Dealer."

(7) There is notably absent in the agreement between Honda Co. and AHM any provision prohibiting Honda Co. manufactured automobiles from being imported into the U.S.

It would appear that if the Plaintiff is concerned that the purchasing public is likely to be deceived by the cars imported by the Defendants, that it should exercise its control over its dealers as provided by the contract with Honda Co. to cause the dealers at least to inform the customer the Guam automobile is not distributed by AHM.

As to the public interest, the public has an interest in being able to purchase Honda automobiles. The Plaintiff and its parent are the victims of their own success in manufacturing and distributing a quality product. If the public has any interest in this litigation, it is to be able to buy Honda automobiles. This is a serve the Defendants are providing.

## CONCLUSION

The Plaintiff has failed to convince this Court it is likely to succeed on the merits, that the harm to the Plaintiff by denying the preliminary injunction is greater than

to the Defendants, or that the public interest weighs in favor of granting the preliminary injunction to Plaintiff.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's motion for preliminary injunction is DENIED.