44 C.C.P.A. (Patents)
ROGER & GALLET, Appellant,
v.
JANMARIE, Inc., Appellee.
Patent Appeal No. 6302.

United States Court of Customs and Patent Appeals.
June 10, 1957.

Choate, Ronalds, Reynolds & Hollister, New York City (William A. Moore, New York City, of counsel), for appellant.

No appearance for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, RICH and JACKSON, retired, Judges.

RICH, Judge.

This is an appeal from the decision of the Commissioner of Patents, acting through the Assistant Commissioner, reversing the decision of the Examiner of Interferences in an opposition by Roger & Gallet to the registration of the mark "Janmarie."

On September 13, 1951, Janmarie, Inc., a California corporation filed application serial No. 618,742, to register the mark "Janmarie," alleged to have been in use since June 8, 1948, and first used "in commerce" on June 21, 1948, in connection with hair tints, hair rinses, hair waving preparations, hand lotions, hand creams, hair oils, hair tonics, and hair dressing preparations.

On March 25, 1953, Roger & Gallet, a New York corporation filed a notice of opposition to the registration, alleging that it believed it would be damaged by such registration because said mark was

deceptively similar to the trademark "Jean Marie Farina" used on eau de cologne and soap from a time antedating the applicant-appellee's mark "Janmarie" by at least thirty-six years. The notice of opposition states: "Opposer *is the owner* of the trade-mark 'Jean Marie Farina', registered to its assignor in the United States Patent Office * * * ." It also avers that, "Opposer *as its assignor's exclusive distributor* in the United States *or as owner,* has used the trade-mark 'Jean Marie Farina' as such on eau de cologne and soap * * *." (Emphasis ours.)

The trademark "Jean Marie Farina" was first registered on March 4, 1930 by Parfumerie Roger et Gallet, Sociéte Anonyme, a French corporation, the certificate reciting that it, and its predecessor firms (1) Gallet, Pellerin & Cie, a partnership organized in December 30, 1909; (2) Roger et Gallet, 1869–1909; (3) Jean Marie Farina, 1862–1869; (4) Jacques Collas and Elizebeth Sophie Gabillot Collas, trading as Jean Marie Farina, 1840–1862; and (5) Jean Marie Farina, 1806–1840; had used the mark for eau de cologne, perfume extracts, toilet waters, and perfumery since 1806.

On October 17, 1947, Parfumerie Roger & Gallet, Sociéte Anonyme, by an assignment recorded in the Patent Office December 24, 1947, sold, assigned and transferred unto the said Roger & Gallet, the New York corporation, the entire right, title and interest in and to a large number of trademarks and the registrations thereof, including the presently involved mark "Jean Marie Farina," and three registrations thereof, "together with the good will of the business in connection with which the said trademarks are used." The stated consideration was "One Dollar and other good and valuable consideration."

Roger & Gallet, the opposer here, had been a distributor of the products of the French firm from 1910 until the above mentioned 1947 assignment.

In his opinion of July 7, 1954, the Examiner of Interferences expressed the opinion that the case turned "upon the relationship between the respective goods and the similarities and differences between the marks" and held that the products of the parties pertain to the identical class of toilet preparations and that the mark "Janmarie" contained nothing which resembled the term "Farina," a part of the opposer's mark. The examiner then concluded that "Jean Marie" and "Janmarie" commonly may be pronounced in the same way, are substantially identical in fact and in law and since both marks are used on the same class of goods they would be quite likely to cause deception of purchasers. The opposition was therefore sustained.

On August 10, 1954, Janmarie, Inc. (acting *pro se* by its president) "appealed" from the above decision of the Examiner of Interferences by a letter sent to the Patent Office. Upon receipt of the letter, Janmarie, Inc. was notified that the limit of appeal was August 9, 1954, and that since the applicant's letter was not received until August 10, 1954, the appeal could not be entered. Janmarie, Inc. replied that it considered the mailing date, and not the date of receipt by the office as the controlling date, and further observed "not being an attorney, and this being our first experience with trademark procedure we are not familiar with Rule 26.3, and will be very happy to comply with any of the requirements under it if you will advise us as to its contents." Upon receipt of this letter, the Commissioner held that Janmarie, Inc.'s "appeal received August 10, 1954 without fee, and its letter of August 24, 1954 are treated as a request for an extension of time for filing an appeal," and extended said time to September 13, 1954. By another letter of September 10, 1954, Janmarie, Inc. took its appeal alleging that "these two trademarks are not pronounced in the same manner, nor do they look alike, nor are they spelled alike, and the average person could in no way be confused by Janmarie, Inc.'s label."

On November 30, 1955, the Commissioner handed down a short opinion (107

U.S.P.Q. 295) holding that opposer was not the owner of the trademarks relied on because "the mark 'Jean Marie Farina' is a mark which identifies and distinguishes the products of a French manufacturer and the French manufacturer *is therefore the owner* of the mark." (Emphasis ours.) On this ground the opposition was dismissed.

In that opinion the Commissioner also said:

"On ex parte consideration of likelihood of confusion, mistake or deception of purchasers between applicant's 'Janmarie' hair and hand preparations and 'Jean Marie Farina' soaps and perfumeries, it is concluded that confusion, mistake or deception is not likely, since the marks do not look alike, nor do they sound alike; and the commercial impressions created by them when seen upon the goods are distinctly different."

Opposer petitioned for rehearing stating that the question of ownership was not raised by any party to the proceedings, by the Examiner, nor by any of the papers involved in the appeal, except by the Commissioner's decision, and requested leave to argue the point.

In answer to the petition for rehearing, the Commissioner wrote a lengthy opinion (109 U.S.P.Q. 16) discussing the history of the mark "Jean Marie Farina," the relationship between Roger & Gallet of New York and the French firm, explaining why, in the opinion of the Commissioner, Roger & Gallet of New York could not legally be considered to be the owner of the mark, and reaffirming the Commissioner's original decision.

On April 20, 1956, notice was filed by Roger & Gallet of appeal to this court.

A motion was then filed by opposer requesting that this court declare "the decisions of Assistant Commissioner Leeds appealed from herein to be null and void as having been made without jurisdiction; and * * * the reinstatement of the decision of [the] Ex-

aminer * * *." This motion was denied.

In March of 1957 opposer filed a motion to advance the appeal on the calendar because of the "unusual importance" of the question, which motion was granted.

A request by Janmarie, Inc. to appear in this court by its president having been denied, no appearance has been made on its behalf, nor has any brief been filed.

As indicated in the foregoing statement, the Commissioner's decisions, reversing the Examiner of Interferences, developed two conclusions of law: (1) That opposer did not become the owner of the registered trademarks relied on by virtue of the assignment of the marks to it; and (2) "On ex *parte* consideration," that confusion, mistake or deception as between those marks and the applicant's mark was not likely.

▮ Conclusion (2) is not before us because it was an *ex parte* decision in favor of the applicant from which opposer could not appeal. In taking its appeal to this court, the opposer properly excluded it from this *inter partes* appeal. Revere Paint Company v. Twentieth Century Chemical Company, 150 F.2d 135, 32 C.C.P.A. (Patents) 1096. We have before us, therefore, only conclusion (1)—the question of the effectiveness of the assignment to transfer ownership of the trademarks. Opposer concisely states the issue in its allegation that there was error in the holding that

"The absolute assignment to opposer of the trademark Jean Marie Farina executed in 1947 by the then owner of the trademark (and at all times pertinent hereto the manufacturer, in France, of the goods to which the mark is applied) regular on its face, for a recited good and valuable consideration and duly recorded in the Patent Office, did not transfer the trademark to opposer."

In the Commissioner's first opinion of November 30, 1955 the above holding was supported by the following two statements:

"It seems clear from the record that the mark 'Jean Marie Farina' is a mark which identifies and distinguishes the products of the French manufacturer; and the French manufacturer *is therefore* the owner of the mark. (Emphasis ours.)

" * * * so long as the French manufacturer continues to manufacture the goods and use the mark 'Jean Marie Farina' to identify and distinguish its goods sold in this country, it owns the mark."

If the above holding is erroneous, then there must be demonstrable error in the reasoning which supports it. We think there is. It will be observed that in the quoted passages there is no mention of the assignment.[1] The holding was simply that the French manufacturer owns the mark—a legal conclusion—because it continued to use it on goods which were sold in this country. This wholly begs the question as to the validity of the assignment by which the French manufacturer attemped to transfer ownership of the mark in the United States to opposer. In effect it seems to hold that unless the French assignor stops making and marking goods for the United States market, assignment of the United States rights is an impossibility.

■ The opinion further said:

"Opposer, *as an importer and distributor,* stands in a position comparable to a wholesaler who neither owns nor uses the mark within the legal concept of ownership and use of a trademark in this country." (Emphasis ours.)

But this is beside the point because we are not concerned with the opposer "as an importer and distributor" but as a putative assignee. We would agree that a *mere* importer and distributor acquires no rights in the marks used on the imported goods by the foreign exporter *in the absence of an assignment* of any kind, but in this case there was an assignment.

In the Commissioner's second opinion, on reconsideration, it was said that "On its face, the instrument appears to be a valid assignment." But it was held, in further amplification of the rationale, that it failed to transfer ownership because it did not comply with Sec. 10 of the 1946 Trade-Mark Act, 15 U.S.C.A. § 1060, which permits assignment of marks only with the goodwill of the business in which the mark is used. The gist of the Commissioner's reasoning is in the following excerpts (not taken in order):

"The enterprise or business of the French manufacturer *and the goodwill* symbolized by the mark 'Jean Marie Farina' were *located in France.* Such business and goodwill continue to be located in France. (Emphasis ours.)

"The record * * * shows that the parties to the instrument have continued *to do* that, and only that, which they were *doing* prior to and and at the time the instrument was executed. * * * (Emphasis ours.)

"Under these facts, the purported assignee could not have received, as a result of the execution of the instrument, anything which it did not have before; * * * There was not * * * any actual transfer of either the goodwill of *the business in which the mark is used* or *that part of the business connected with the use of and symbolized by the mark.* The mark continues to be used in the French concern's business and to symbolize the goodwill of that concern." (Emphasis in original.)

We shall discuss these points in the order in which we have placed them.

■■ We think it is a mistake to assume that all of the goodwill symbol-

---

1. In the opinion the only references to the assignment are these: " * * * in 1947 the registrations were assigned to opposer who renewed them in 1950." and "The instrument which transferred record title to the registrations * * *."

ized by a trademark in international use has its situs at the place where the goods bearing the mark are made, at least to the extent of being so immobilized there as to preclude its original owner from parting with segments of it on a national basis. We are concerned here with business and goodwill attached to United States trademarks, not French trademark rights existing under French law. We take it as axiomatic that neither the trademark law of France nor of the United States has any extraterritorial effect. Where, then, can *business* done under United States trademarks, registered in the United States Patent Office, and the goodwill symbolized by them, have their situs except in the territory where United States law is enforceable? The location of the *owner* of such trademarks, the beneficiary of the goodwill attached to them, is an entirely different question and in this case the owner, until such time as he chose to part with his United States rights, was unquestionably the French manufacturer, located in France. But, to our minds, what was being dealt with by the assignment in question was the business done in the United States under United States trademarks symbolizing goodwill in the United States. This opposition proceeding was brought to protect that business and goodwill against confusion in the domestic market. The legal concept of goodwill which we adopt must be in accord with business realities. We therefore hold that the situs of the goodwill of the business done under the "Jean Marie Farina" trademarks in the United States was in the United States.

■ On the next point, that the parties were *doing* the same things after the assignment they were doing before, we think this is of little or no significance on the question of the validity of the assignment and of no help in deciding that issue. The important thing is not what they *did* do, but what they *could* do.

■ The Commissioner's first opinion does not seem to regard the assignment as a complete nullity. It says that it "transferred record title to the registrations" and expresses the view that it "might well create an estoppel as between the French manufacturer and the U. S. distributor so far as the registrations are concerned." What the opinions fail to take into account, seemingly because up to the time of decision the goods sold in the United States continued to come from the French factory, is the possibility that the same trademark can have different owners in different countries. Assuming, *arguendo*, that the opposer did acquire the U. S. trademarks, in the absence of some other agreement it was for the opposer to decide where it bought its goods, to be sold under the mark. This it could not have done before acquiring ownership of the marks.

On the last point, which we shall simplify to the statement that the opposer *could not* have received anything by the assignment which it did not have before, this seems to rest on the two-pronged proposition that all goodwill was in France and that the outward conduct of the parties did not change. We have dealt with the first. As to the other, there are in this case even now clear evidences of changed conduct which have been overlooked. As the Commissioner pointed out, "In 1950, opposer applied for renewals of the registrations, alleging itself to be the owner of the mark, and registrations under the assignment. The Patent Office granted the renewals." Furthermore, the opposer filed the notice of opposition herein, as owner. The parties, therefore, have not "continued to do that, and only that, which they were doing prior to and at the time the instrument was executed." They have been behaving as though a whole bundle of legal rights had been transferred by the assignment, which we think is clearly the case.

In our opinion the validity of the assignment is controlled by the decision of the Supreme Court in A. Bourjois & Company, Inc. v. Katzel, 260 U.S. 689, 43 S.Ct. 244, 245, 67 L.Ed. 464, 26 A.L.R. 567, wherein a French company sold to

the plaintiff, its former American distributor, its business in the United States, the goodwill and certain trademarks for face powder. Defendant purchased the genuine product from the French manufacturer-assignor, with genuine labels, and attempted to sell it here under the assigned marks. The court upheld an injunction, saying:

"It is said that the trade-mark here is that of the French house and truly indicates the origin of the goods. But that is not accurate. *It is the trade-mark of the plaintiff only in the United States and indicates in law,* and, it is found, by public understanding, *that the goods come from the plaintiff although not made by it.*" (Emphasis ours.)

The court further pointed out that after the sale the French manufacturer could not, itself, have come to the United States and have used its old marks in competition with the plaintiff.

The Commissioner's second opinion attempts to distinguish the Bourjois case on the ground that "the facts in the present case are vastly different," a proposition with which we do not agree. Referring to the above quotation, the Commissioner emphasized the statement that "by public understanding" the goods came from the plaintiff, a factor assumed to be lacking here. We point out that the Supreme Court threw in this factor conjunctively as *in addition* to its finding that the trademarks indicated *in law* that the goods came from the plaintiff, which, on the basis of the whole opinion, we believe is enough.

■ The Commissioner said further, "In the present case there is no evidence of sale of the French concern's business in the United States to the opposer for a large sum." This statement is a negative pregnant and it is difficult to say precisely what is meant. The assignment is certainly clear evidence of a sale of the United States business. If it is the size of the consideration which is under fire, we do not think assignments can be laid open to attack on this ground. And further it was argued that "There is no evidence that opposer operates any business other than the distribution of the French manufacturer's product." Other statements were made to the effect that the public would be likely to believe that the goods emanate from the French company. We do not see that opposer was under any obligation to show it had any business other than the sale of the French product. The record shows that the labels bore the name "Roger & Gallet," which is opposer's name, notwithstanding it is *part of* the French company's name, along with the notation "New York" as well as "Paris." It also shows that labels were affixed at least to some products saying "Roger & Gallet, New York, Distributors" and that jobbers sheets and price lists distributed to the trade gave New York addresses for "Roger & Gallet." These facts are a close parallel to the evidence in the Bourjois case which led the Supreme Court to say there was "public understanding" that the goods came from the plaintiff in that case.

■ We hold that the assignment of the trademarks and the registrations thereof "together with the goodwill of the business in connection with which the said trademarks are used," dated October 17, 1947, was a valid assignment which transferred to opposer-appellant ownership of the "Jean Marie Farina" marks and an existing goodwill in the business done under those marks in the United States. The Commissioner was therefore in error in holding that opposer was not the owner and in dismissing the opposition on that ground.

We agree with the following quotations from Keebler Weyl Baking Co. **v.** J. S. Ivins' Son, Inc., D.C.Pa., 7 F.Supp. 211, at page 214:

"* * * Keeping pace with industrial and business development the law has advanced a considerable distance from the earlier decisions which were made when small individual businesses personally owned and personally managed were the

rule rather than the exception. * * The use of a trademark does not any longer necessarily import that the articles on which it is used are manufactured by the user but it may be enough that they are manufactured for him, that he controls their production or even that they pass through his hands in the course of trade and that he gives to them the benefit of his reputation and name or business style. * * * "

So much of the decision of the Commissioner as has been appealed from is therefore *reversed* and the case is *remanded* for further proceedings not inconsistent with this opinion.

Reversed and remanded.

WORLEY, Judge, because of illness, was not present at the argument of this case and did not participate in the decision.

JACKSON, Judge, retired, recalled to participate herein in place of COLE, Judge, absent because of illness.