**INTERNATIONAL ARMAMENT CORPORATION,
Plaintiff-Counterdefendant,**

v.

**MATRA MANURHIN INTERNATIONAL, INC., Defendant-Counterplaintiff and Third-Party Plaintiff,**

v.

**CARL WALTHER SPORTWAFFENFABRIK GMBH, Counterdefendant and Third-Party Defendant.**

**Civ. A. No. 85–929–A.**

United States District Court,
E.D. Virginia
Alexandria Division.

Feb. 24, 1986.

Michael J. Parker, Alexandria, Va., Clifton S. Elgarten, Crowell & Moring, Washington, D.C., for plaintiff-counterdefendant.

Steven E. Lipman, Lupo, Lipman & Lever, Washington, D.C., Arthur O. Klein, Klein & Vibber, New York City, for defendant-counterplaintiff and third-party plaintiff.

Robert S. Swecker, Alexandria, Va., for counterdefendant and third party defendant.

## MEMORANDUM OPINION AND ORDER

BRYAN, Chief Judge.

On Friday, February 14, 1986, this court granted partial summary judgment to

plaintiff International Armament Corporation (Interarms) as to liability in the above-captioned case. Defendant Matra Manurhin International, Inc. (MMI), has since questioned the scope of the summary judgment order. This order and opinion will clarify the February 14 order.

Specifically, MMI has questioned whether the February 14 order granted summary judgment on plaintiff's second claim (that MMI has misappropriated to its use Interarms' goodwill associated with the PP, PPK and PPK/S model designations for Walther pistols); on defendant's third counterclaim (that Interarms and Carl Walther, third party defendant, had misrepresented the origin of Walther pistols imported into the United States), and on defendant's sixth counterclaim (that plaintiff has falsely advertised its imported Walther pistols as being the "only genuine" Walther pistols).

This action is one for both equitable and legal relief arising from the alleged violation of the rights of the United States trademark owner by the importer of foreign merchandise bearing allegedly infringing markings. Relief is sought under 19 U.S.C. § 1526, the "Genuine Goods Exclusion Act;" 15 U.S.C. §§ 1051, 1124, the Lanham Act, and the common law of unfair competition.

Plaintiff Interarms is a Delaware corporation with its principal place of business at Alexandria, Virginia. Defendant MMI is a Delaware corporation that has done business at addresses in Fort Lauderdale, Florida, and Alexandria, Virginia, though it now states its principal place of business as being in the former location. Jurisdiction of this court is proper under 28 U.S.C. § 1338, and venue is found under 28 U.S.C. § 1391.

Interarms is the registered owner of the United States trademark rights for the two marks involved in this case. The two marks, "Walther" with a banner and "Walther" standing alone, are registered with the United States Patent and Trademark Office as numbers 303,701 and 1,120,-867. The marks are used to identify weapons manufactured by or under license from Carl Walther SportWaffenbrik GMBH, a West German corporation known worldwide for quality firearms since before the Second World War. At issue in this case is the import of pistols in the "PP" series (bearing model designations "PP," "PPK," and "PPK/S") by the defendant and manufactured by its parent company, Matra Manurhin Defense of France, under license from Carl Walther.

Interarms has obtained an order from the United States Customs Service barring the import of pistols made by Manurhin bearing the word "Walther." A stay of this order was lifted on November 5, 1985, effective 30 days from that date, by the Department of the Treasury, thus leaving the order extant. The Customs ruling found that the use of the word "Walther" in defendant's "License Walther" marking (or variations of it) would have a likelihood to confuse ordinary purchasers as to the origin of the goods and violate the two statutes at issue here, 19 U.S.C. § 1526 and 15 U.S.C. § 1124.

Interarms now seeks an order barring the import of such weapons and their sale once in the United States.

Interarms comes to this matter as the exclusive distributor of Walther firearms in the United States since the early 1960's. This relationship was memorialized in a 1969 agreement with Carl Walther. Defendant's parent company, Manurhin, has manufactured the pistols sold here by Interarms from 1960 until 1982, under an arrangement with Carl Walther. The French firm manufactured "unfinished" pistols, which were shipped to West Germany and "finished" by Carl Walther in a process the extent of which is not clear from the record. It is clear, however, that Carl Walther marked the pistols with its trademark "Walther" and banner, and inscribed the weapons as "Made in Germany" or "Made in West Germany." Carl Walther then sold pistols so marked to Interarms for sale in the United States. As sold here, the pistols also generally bore Interarms marks.

During the 22 years referred to above, Manurhin also produced and marketed PP series pistols marked with its own Manurhin trademark and "License Walther" or "Lic. Excl. Walther." These pistols were sold in countries other than the United States. Manurhin also sold some 9,000 pistols to Interarms in 1982 and 1983 marked with the Walther banner trademark, Interarms' markings and Manurhin's mark. The pistols were stamped "Made in France" and sold in the United States by Interarms. MMI has also sold pistols marked "License Walthers" in the United States since 1984.

Finally, Manurhin had signed an agreement with Carl Walther in 1973 which gave Manurhin the right to use the "License Walther" marking on PP series pistols it manufactured and to promote them as "Manurhin-Walthers." The agreement did not limit Manurhin's right to sell these guns, except to bar sales in West Germany, where Carl Walther was to be exclusive distributor.

An earlier agreement between Carl Walther and Manurhin had given Walther the exclusive right to use both the Walther with banner mark and Manurhin's trademark "Manurhin Exklusivlizenz Walther" (Manurhin exclusive license Walther) after April 1, 1960, except in nations under or formerly under French influence and three others (not including the United States). Manurhin had been given the manufacture and distribution license for these marks in 1950 for PP series pistols and .22 caliber automatic rifles. The 1960 agreement was in effect until the 1973 agreement superseded it, as between Carl Walther and Manurhin.

Interarms, for its part, had obtained the exclusive distributorship in the United States of Walther firearms in the 1969 agreement. That agreement was renewed and extended to allow Interarms to sublicense the right to manufacture Walther PP series pistols in the United States in 1977. The Weaver Companies of Gadsden, Alabama, were designated as the American manufacturers of pistols that have since been marketed here with Walther and Interarms marks.

In granting the motion for summary judgment as to liability, the court determined that there is no dispute as to any material fact including those noted above and those to be discussed hereafter. The court determined that plaintiff owns the trademarks "Walther" with a banner and "Walther" in the United States as the result of assignments from Carl Walther in 1981 and 1982. Defendant had sought cancellation of the marks in its counterclaim on grounds that the assignments did not transfer complete ownership of the marks; that the assignments did not transfer the goodwill associated with the marks in the United States, that Carl Walther had abandoned the "Walther" word mark, and that the assignments did not indicate the true relationship between Interarms and Carl Walther.

As a preliminary matter, the court found that plaintiff's status as exclusive United States distributor of Walther firearms dates from 1969, predating defendant's 1973 agreement with Walther under which MMI's parent, Manurhin, was licensed to manufacture and sell pistols promoted as "Manurhin-Walther" and marked as "License Walther" almost worldwide. The 1960 agreement between Walther and Manurhin returned to Walther the exclusive right to sell its guns in the United States, among other countries. Walther therefore had that right to cede to Interarms in 1969 without interference from any relationship with Manurhin. Manurhin's 1973 agreement with Carl Walther, which appears to allow the French company to sell Walther firearms in the United States, does not override the prior distributorship of Interarms.

The court rejected the defendant's arguments for cancellation. The law is well settled that an exclusive distributor of a foreign manufactured good may obtain United States ownership of the marks through assignment from the foreign owner. *A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923); *Rog-*

er & Gallet v. Janmarie, Inc., 245 F.2d 505 (C.C.P.A.1957). A valid assignment must carry with it the business and goodwill associated with the mark. *Dresser Industries, Inc. v. Heraeus Englehard Vacuum, Inc.*, 395 F.2d 457 (3d Cir.1968); *In re Geo. J. Ball, Inc.*, 153 U.S.P.Q. 426 (T.T.A.B. 1967).

 Here the plaintiff already possessed the business as exclusive distributor in this country, a fact which does not make the assignment any less valid. *In re Geo. J. Ball, supra*, 153 U.S.P.Q. at 427; *see, e.g., Avedis Zildjian Co. v. Fred Gretsch Mfg. Co.*, 251 F.2d 530, 532 (2d Cir.1958). The assignments here also recited that a transfer of the goodwill in the business in the United States was made, which is sufficient in such cases. *In re Geo. J. Ball, supra*, 153 U.S.P.Q. at 427. The assignments may transfer United States ownership, as opposed to worldwide ownership, in the marks. *Rogers & Gallet, supra*, 245 F.2d at 510–11. This is a familiar aspect of the territoriality of trademarks, law which dates back to the *Bourjois* decision in 1923. The court also finds that Interarms has developed its own goodwill in the Walther marks during its years as exclusive distributor by heavily advertising the guns bearing both Interarms and Walther marks and making prominent mention in the ads of its distributor status.

 In cases with facts like the above, the United States owner of a mark has every right to protect it under the two statutes involved here. Those two statutes, 15 U.S.C. § 1124 and 19 U.S.C. § 1526, allow the owners of a United States trademark to prevent imports where marks on the goods are confusingly similar to those owned by the United States owner or where the marks are owned by United States companies. That the assignments here were made to exclude import of goods made by a foreign manufacturer and licensee (Manurhin) of the foreign holder of the trademarks (Carl Walther) is irrelevant. Ownership of the marks is a matter of agreement between the foreign owner and the United States distributor. *See A.*

*Bourjois & Co., supra*, 260 U.S. at 691–92, 43 S.Ct. at 245. Such assignments are often made to enable the distributor to exclude imports of the same products by competitors. There is also clear precedent for United States companies wholly owned by foreign parents, as Interarms is owned by a Panama corporation (Interarms Industries, S.A.), to protect their marks under 19 U.S.C. § 1526 (which requires an American company to own the mark). *Osawa & Co. v. B & H Photo*, 589 F.Supp. 1163, 1164–65 (S.D.N.Y.1984) (Leval, J.).

 Plaintiff has merely sought to act in the manner contemplated by the statutes. Plaintiff's ownership of the marks is subject to conditions on its license agreement with Carl Walther, which make that distributorship revocable by Walther for violation of "essential" clauses. Such limitations on an assignment do not invalidate or make it a sham, however. *In re Geo. J. Ball, Inc., supra*, 153 U.S.P.Q. at 428.

 Defendant has also charged that the assignments were not supported by consideration, though they recited the exchange of consideration. Plaintiff's president, Samuel Cummings, has testified that no money changed hands. Deposition of Samuel Cummings, at 45, 1. 12. Consideration for the assignments is found, however, in plaintiff's promise to use its best efforts to promote the sale of Walther firearms to the benefit of both Interarms and Carl Walther.

 The court's decision on the validity of the assignments necessarily grants plaintiff's first claim and rejects defendant's first counterclaim. The court also finds that Carl Walther has not abandoned the mark "Walther," which itself constitutes the dominant feature of the "Walther" with banner mark. Though Walther may have made a redundant licensure of the right to use its name in the 1973 agreement with Manurhin, the German company has consistently controlled the right to use its name in the past 40 years and has shown no intent on this record to abandon it.

■ Walther did describe "Walther" as a trade name, rather than a trademark, in its 1973 agreement with Manurhin. Defendant argues that this proves that "Walther" no longer serves the guarantee or quality assurance function of a trademark, but merely identifies or describes the type of product. *See generally Siegel v. Chicken Delight, Inc.,* 448 F.2d 43 (9th Cir.1971); *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir.1959).

■ The court rejects this argument. Carl Walther has recently (in 1982) referred to the Walther name (as part of "Lic. Walther" or "Lic. Walther PP") as a "trademark." Letter of John P. Simpson, Director, Office of Regulations and Rulings, United States Customs Service, to Arthur O. Klein, Esq., May 31, 1985. The Walther officer referred to the current license agreement between Manurhin and Walther, made in 1982. In that agreement, Walther gave Manurhin permission to use the Walther name in marketing its pistols in return for a five per cent royalty. The court agrees with the Customs Service's finding that Manurhin's willingness to pay for the use of the Walther name indicates a desire to exploit the name for its market value, showing the name is not merely descriptive or generic but still serves a quality assurance function.

In addition, MMI instructed its United States distributors to promote Manurhin pistols as having been made under a license from Walther to "greatly enhance the marketing appeal" of the product in 1984. Deposition of Fredrik Hugh Muller, at 161, 1. 5–8. A May, 1984 memo by Thomas Barness, MMI's president, also credited both the Walther banner and Walther name with being worth at least $50 in the United States market per pistol. Murrill deposition exhibit No. 7, Memo to Francois Oudin from Thomas Barness, May 16, 1984. Clearly MMI desired to exploit the Walther name for its market value.

Defendant's quarrel with Walther over the 1973 agreement is now proceeding in an arbitration proceeding of the International Chamber of Commerce, which is the proper forum for such disputes under that contract's arbitration clause.

■ Upholding the validity of the assignments gives the plaintiff the right to relief under 19 U.S.C. § 1526. Plaintiff is also entitled to relief under 15 U.S.C. § 1124. Defendant's importation of weapons bearing the words "License Walther" and promoted as "Manurhan-Walther" infringed on the marks owned by plaintiff. The defendant's use of the word "Walther" on its imported pistols constituted a use of the dominant feature of the two marks owned by plaintiff. Defendant's use of "Walther" is intended to associate Manurhin's pistols with Walther's name in the mind of the public. The name "Walther" clearly connotes quality in firearms, and is world famous for that meaning. This use of "Walther" is likely to lead to confusion, as the Customs Service found. Letter of John P. Simpson, Director, Office of Regulations and Rulings, United States Customs Service, to Arthur O. Klein, Esquire, May 31, 1985. Plaintiff is entitled to protection under the Lanham Act.

In finding the assignments valid, the court necessarily also dismisses the defendant's second, fourth and fifth counterclaims.

The court's dismissal of Carl Walther from this lawsuit in deference to a pending arbitration proceeding before the International Chamber of Commerce also disposes of the second and fourth counterclaims as they are directed against Carl Walther.

■ The court found that plaintiff Interarms did not defraud the United States Customs Service in representing that the pistols marked with the banner trademark were manufactured by Carl Walther and exclusively distributed in this country by Interarms. Carl Walther had performed finishing operations on the pistols, as defendant has acknowledged in a joint pre-trial stipulation of facts with plaintiff. Jt. Pre-Trial Stipulation of Facts, ¶ 12. Defendant's parent company has been participating in this process of manufacture in France with finishing in West Germany for

25 years, and has no standing to object here. Use of the term "manufacturing" to describe Carl Walther's participation in preparing the guns for sale is not evidence of fraud.

■ The fourth counterclaim alleges that Interarms and Carl Walther have misled the consumer to believe there are three sources of Walther pistols, and that the Walther name has become a generic term. The fifth counterclaim alleges that Interarms' agreement with an Alabama manufacturer to produce pistols to be sold as Walthers in the United States has damaged the goodwill and reputation of the defendant. This manufacturing agreement was entered into pursuant to an agreement between Carl Walther and Interarms in 1977 allowing Interarms to grant a sublicense, as noted.

The court's finding that plaintiff owns the trademarks validates the manufacturing sublicense, and leaves defendant with no goodwill or business to have been damaged. Further, the court's ruling necessarily rejects the contention that "Walther" has become a generic term or that Interarms and Carl Walther have contributed to confusion about their own trademarks.

■ Defendant's third counterclaim charges that Interarms has misrepresented the origin of the "Walther" pistols it sells by describing them as made by Carl Walther in West Germany when Manurhin actually manufactured the weapons in France. As noted, the parties have stipulated that the pistols have been finished in West Germany by Walther after manufacture in France by Manurhin. Whatever the extent of the contribution Carl Walther has made to the finished product, defendant's parent company has participated in this arrangement for many years. Again, it has no standing before this court to argue that the procedure was fraudulent.

■ Defendant's sixth counterclaim alleges that Interarms has falsely advertised the Walther PP series pistols it sells in this country by billing them as the "only genuine" Walther PP's. Marks of such genuineness are alleged to have been advertised as either the Walther banner trademark or the "Made in W. Germany" inscription affixed by Carl Walther during the finishing process. The court's findings that the plaintiff owns the two trademarks necessarily implies that such advertising is not false. Interarms owns the trademarks in the United States. It therefore owns the right to describe its product as the only genuine Walther product in the United States market. Its ownership of the marks would be meaningless if it could not so describe the products for which it is exclusive distributor and on which the marks are inscribed. The situation is parallel to the right of the United States owner of trademarks on cymbals to describe its product as the "genuine" article in *Avedis Zildjian Co., supra,* at 533.

■ Finally, the court's ruling also sustains plaintiff's second claim, that its 25 year exclusive distributorship of Walther pistols in the PP series here entitles it to protection of use of the model designations PP, PPK and PPK/S. Those three groups of letters are associated in the public mind with Walther pistols, as even a defense witness has admitted in deposition testimony. Deposition of Pierre Berges, at 157, 1. 17–19. All three corporate entities in the cases have used these designations in connection with Walther guns. Jt. Pre-Trial Stip. of Facts, ¶ 31. Such model descriptions have never been used for non-Walther weapons. *Id.*

■ Manurhin now protests that the designations are essentially generic ones, and notes their origin in German language terms for "police pistol" ("polizei pistole," "polizei pistole kurz"). Manurhin insists that it has sold PP series pistols in the United States without the Walther name attached. Deposition of Thomas Barness, at 153, 1. 10–11, 16–18; at 195, 1. 5–7, 15. This assertion, also made in Mr. Barness' affidavit, contradicts the Joint Pre-Trial Stipulation of the parties, where the two sides agreed that the designations have never been used for non-Walther weapons as noted above. The court is given some

pause by the statement of a Walther officer, quoted in the May 31, 1985 letter of United States Customs Service official John Simpson, that the 1982 agreement between Carl Walther and Manurhin gave the latter the right to use the Walther name on pistols for a fee, but that Manurhin is "free to manufacture Model PP pistols without those [Walther] markings." It may be implicit in the statement of the Walther officer that the pistols might be described as PP series while omitting use of the Walther trademark. However, the 1982 agreement itself describes the pistols as "WALTHER pistols PP, PPK, and PPK/S," a usage which seems to confirm the parties' stipulation that the model designations are exclusively associated with the Walther name. For the purposes of this litigation, the parties' joint stipulation will control. The court rejects MMI's contention that the model designations are merely descriptive. The designations continue to inform the public that the pistols are Walther pistols, indicating their quality rather than their type alone. As information about quality, the model designations relate to protectible trademark material. The contrary opinion of defendant's pollster, Michael Rappeport, does not persuade the court. It should be pointed out that Mr. Rappeport's opinion tends to support arguments of both sides in this dispute to some extent. His opinion that the public perceives three independent manufacturers of PP series pistols indicates that Manurhin has succeeded in diluting the association of the Walther mark owned by Interarms with the plaintiff's products.

As owner of the marks in the United States, Interarms has the right to protect the three model designations from use here by anyone else. Use of the designations by defendant demonstrates the goodwill associated with the Walther marks owned by plaintiff. To allow another company to sell pistols using those designations would be to allow that company to associate its product—even though it is the same product, made outside the United States—with the Walther name and use the United States goodwill built up by that name. Manurhin,

as noted earlier, has not developed the goodwill of the Walther name in this country. Interarms has developed that goodwill as exclusive distributor and now owner of the marks. Affidavit of W. Frank Slye.

MMI also seeks clarification of the court's position on the allegation that Interarms defrauded the United States Patent and Trademark Office (PTO) in filing an affidavit in support of an application for incontestability of trademark 1,120,867. The PTO discovered that, contrary to Interarms' affidavit, litigation was pending concerning the mark in the Southern District of New York (Civil Action 85–3589). Interarms has responded that it had not yet been served in that case, which was filed four days before the May 14, 1985 affidavit, and was unaware of the litigation. The court is satisfied with Interarms' representation on this matter in its memorandum in support of motion for summary judgment (at 32), and notes that the alleged fraud had no real effect on the PTO's decision. Even defendant's attorney has noted that the PTO decision to deny the Section 15 affidavit was "proper in its result." Letter of Arthur O. Klein, Esquire, to Mary E. Bowman, Affidavit-Renewal Examiner, PTO, September 12, 1985. The matter is moot.

The case next goes to trial on the issue of damages. The court's resolution of the issues in this order and the February 14 order, however, makes it clear that the injunctive relief sought by plaintiff in its complaint should be awarded.

For the reasons given above, it is hereby ORDERED that:

1. The motion of the plaintiff for summary judgment on the issue of liability is granted on both claims made in its complaint.

2. The defendant's counterclaims are dismissed.

3. The defendant, Matra Manurhin International, Inc., or anyone acting in concert with it, is barred from using "WALTHER," "PP," "PPK," or "PPK/S," in any configuration, form or manner, on

weapon products, or in connection with the sale, importation, advertisement or promotion of weapon products, in the United States.